UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

IN RE:

PEARL MANAGEMENT CORPORATION,

Debtor.

Case No.: 11-47422
Hon. Walter Shapero
Chapter 11

_____/

**PRELIMINARY OPINION IN CONNECTION WITH DEBTOR'S MOTION FOR DAMAGES FOR CREDITOR MISCONDUCT AND SANCTIONS, ETC. (DOCKET #'S 138, 163), AND MOTION FOR ORDER CONFIRMING THAT NO STAY IS IN EFFECT (DOCKET # 146)**

Prior to the filing of this Chapter 11 case on March 18, 2011, Debtor and its principals, Steven Vannoy and Patricia Vannoy, became subject to a substantial money judgment against them in a state court proceeding. The judgment creditors ("Creditors") had obtained the appointment of a state court Receiver to sell specified real estate of Debtor and apply the proceeds to the judgment debt. In February 2011, that receivership order was expanded to also cover certain property of Patricia Vannoy.

Soon after the bankruptcy filing, this Court held proceedings under 11 U.S.C. § 543 to determine if, or to what extent, the Receiver was to turn over to the Debtor the property the Receiver was authorized to sell by the state court. Those proceedings culminated in this Court's Order of August 31, 2011, essentially continuing the Receiver in possession under specified terms and conditions. Previous to the issuance of that Order, the Receiver had also obtained from the state court an order directing Steven Vannoy, Patricia Vannoy, and Debtor's bankruptcy attorney to show cause in the state court on September 16, 2011, why they should not be held in contempt for

1

interfering with the Receiver in carrying out his duties. In response, the Vannoys and Debtor sought an accelerated hearing in this Court essentially seeking to stay the September 16, 2011, state court proceeding. This Court held such a hearing on September 8, 2011, and on September 12, 2011, issued its Opinion and Order ("September 12th Order") (Docket No. 97) essentially staying the September 16th state court hearing and certain other actions in certain respects, and, in addition, specifying what could still go forward in the state court, and in Paragraph 2 thereof, what could not. In the September 12th Order, the Court also set an evidentiary hearing for October 5, 2011,

> for the purpose of determining whether or not, or the extent to which, if any, the Court should enjoin all proceedings, including under Paragraph 2, above, against Steven Vannoy and Patricia Vannoy during some part of this bankruptcy case on the grounds that such may materially adversely affect the reorganization process.

That order further stated that "all proceedings against said individuals permitted under Par. 2 above in the state court are also hereby temporarily enjoined."

As part of their efforts to collect their judgment, Creditors had commenced garnisheing the wages of Patricia Vannoy who was employed at a medical facility. MCR 3.101(5)(b) relating to period wage garnishments limits such to 91 days after the issuance of the writ of garnishment. Creditors sought an extension of that 91 day period in the state court and by an order dated August 16, 2011, in a hearing apparently participated in by the Vannoys through counsel, the state court ordered that future garnishments of Patricia Vannoy's salary shall be in effect for four (4) consecutive garnishment periods (364) days upon the filing of a $60.00 fee. That order was not appealed. Likely commencing soon after August 16, 2011, monies were paid pursuant to the garnishment writ by way of checks sent to an attorney for the Creditors, and possibly before the date of the September 12th Order.

The October 5th hearing contemplated by the September 12th Order was held and resulted in this Court's further order of October 6, 2011 ("October 6th Order") (Docket No. 114), which in essence and by specific language and reference to the September 12th Order, stated:

> It is ordered that the injunction set forth in the [September 12th] Order is continued to, and including November 8, 2011, subject to further order of the Court.

A copy of the October 6th Order had been timely sent to the Receiver's attorney who sent it to the attorneys for the Creditors. By a specific provision in the October 6th Order, a copy of that order was also sent to an attorney for the Creditors. During the period between the September 12th Order and the October 6th Order, apparently funds garnisheed from the wages of Patricia Vannoy were sent by check to the attorney for the Creditors who (except possibly with respect to one such check which he had at the time of obtaining knowledge of the October 6th Order) turned those checks over to his clients. It appears that, after having been apprised of the October 6th Order, Patricia Vannoy's employer stopped making deductions pursuant to the garnishment, at least until November 8, 2011, after which the employer again started honoring the garnishment and sending appropriate checks to the attorney for the Creditiors. That attorney is continuing to hold all such checks pending the outcome of these proceedings.

Debtor and the Vannoys argue that (a) retention of the proceeds of any garnishment in effect commencing with September 12, 2011, were and are in violation of the indicated orders of this Court, and, the Creditors and their attorneys should be held in contempt in connection therewith and be ordered to turn those funds over to Patricia Vannoy who should also be granted damages, etc., for such contempt; and (b) the indicated injunction continued past November 8, 2011, and remains in effect.

3

There is no question that the garnishment of Patricia Vannoy's wages between October 6, 20ll, and November 8, 2011, to the extent such occurred, violated this Court's October 6th Order.

The initial and only questions the Court is disposing of in this Opinion are:

1. Did the September 12th Order operate to enjoin the operation of the garnishment of Patricia Vannoy's wages, i.e., between September 12, 2011, and October 6, 2011?; and
2. By virtue of the October 6th Order, did the Court's injunction terminate on November 8, 2011, and therefore was no longer in effect after that date?

The Court finds the answer to the first question is "yes," i.e., the September 12th Order did operate to enjoin the garnishment of Patricia Vannoy's wages between September 12, 2011, and October 6, 2011. It is quite clear, both on the face of the September 12th Order and from the hearing(s) that led to it, that the state court receivership proceedings had been expanded to beyond the pure liquidation of the originally defined pieces of real property to cover collection actions against the individual judgment debtors, and in particular, Patricia Vannoy. Indeed, her wages were the subject of known, and discussed, ongoing garnishments. It is also clear from the September 12th Order itself that while its precipitating factor may have been the state court's order to show cause against the indicated individuals relating to a claimed interference with the activities of the receivership, there was extensive discussion both at the hearing, and more importantly, in the September 12th Order itself about the issue of proceedings directed toward collection of the judgment from the individual assets of the Vannoys. If one were to limit the inquiry to Paragraph 3 of the September 12th Order on page 6 thereof, an argument can be made that no injunctive order was thereby put in place nor would be until the October 5th hearing contemplated by that paragraph took place. But, the inquiry cannot be so limited because immediately following Paragraph 3 of the September 12th Order, its concluding language states:

4

> Pending that hearing and the issuance of this Court's Order in connection therewith, the Court finding that short delay would not be prejudicial and, in the interest of avoiding conflict between the two courts, any and all proceedings permitted under Par.2 above in the state court are also hereby temporarily enjoined.

The garnishment of Patricia Vannoy's wages comes within the proceedings permitted under the referred to Paragraph 2 of the September 12th Order. Furthermore, the Court's conclusion is reinforced by certain language in the subsequent October 6th Order herein referred to which starts out by characterizing the September 12th Order as,

> the Court having temporarily enjoined any and all proceedings against Steven Vanoy, Patricia Vanoy, Robert Reed and Sheri S. Saad, to collect the debt referred to in par. 1 of the factual findings set forth in that Order.

If one needs an analogy, it might be to the situation where a temporary restraining order is sought and issued pending an evidentiary hearing on the issuance of a temporary injunction, except that in this case the temporary restraining order was not issued *ex parte*. The thus required conclusion from the clear language of the September 12th Order is that the wages which were the subject of garnishment between September 12, 2011, and October 6, 2011, must be returned to Patricia Vannoy.

The answer to the second question is somewhat more complex, but ultimately it is that the injunction terminated on November 8, 2011. Most importantly, it is the language of the October 6th Order itself that supports that conclusion, when, after referring to the "Order" (which is the September 12th Order) it says:

> The injunction set forth in the Order is continued to, and including November 8, 2011, subject to further order of the Court.

5

Given the context, language and framework of the October 6th Order and the October 6th Order itself and what preceded it, and the maxim that the Court speaks by its orders (and most particularly must do so in cases which involve potential contempt), that language must be taken to mean that (a) if the indicated injunction were to continue after November 8, 2011, continuation had to be effected by way of a court order doing so (and the facts are that no such order was sought or entered), and, (b) absent any such order, the injunction terminated on that date. While that is the Court's conclusion, other facts surrounding the entry of the October 6th Order, and in particular the November 8th date in that Order, provide a fuller picture, but not one that changes the indicated result.

The October 6th Order, while it refers to a November 8th date, does not itself set a hearing for that date for the purpose of considering continuation of the injunction. Also, a review of the docket does not indicate any specific notice of a hearing set for that date with reference to that matter. What the docket does indicate is that at previous hearings held on or about September 8th and September 13th, relating to claims and to having a status conference to review the status of the real estate sales contemplated by the Receiver, a hearing date of December 8, 2011, was set for such; it is possible that during such hearings various dates, including November 8th, might have been discussed; and, it is further possible when the October 6th Order was prepared by the Court (without prior input from the parties) the Court may have inserted the possibly discussed November 8th date, rather than the December 8th date, which the Court and the interested parties were aware was to be a scheduled hearing on various pending matters and as such might be a likely date to also further consider the injunction. As noted, however, (a) no hearing was scheduled for November 8th either in the October 6th Order or separately; (b) the docket reflects no adjournment of any such hearing if it was or had been scheduled (c) no objection was filed with reference to the October 6th Order and

6

the November 8th date contained therein after it was entered; and (d) no motion or request was filed to specifically continue the injunction after the November 8th date specified in the October 6th Order (though the pending motions do argue that the injunction is still in effect).

If the November 8th date was erroneous or inappropriate, or there was anything else wrong with that order, it was up to the adversely affected party(s) to timely seek its correction or a rehearing thereon, or appeal therefrom. That is the way the system does, and should, work, and as such requires the vigilance of the parties. In any event, if the date were December 8, 2011, the same basic question would be before the Court, save possibly the effect of such on about one month's garnisheed wages, and the same answer would pertain. Regardless, however, a fair reading of the language of the October 6th Order itself, particularly in the context of contempt proceedings, requires the indicated conclusion that the injunction ended by its terms on November 8, 2011. That is not to say that it could not be reinstituted by an appropriately made and specific request and the facts supporting doing so - but that is not before the Court.

The initial result of the foregoing is therefore that (1) Patricia Vannoy's wages garnisheed between September 12, 2011, and November 8, 2011, were garnished in violation of the Court's injunction and to the extent they were, must be returned to her; (2) any such wages garnisheed after November 8, 2011, were subject to garnishment and not in violation of the indicated injunction.

Counsel for Debtor and/or Patricia Vannoy shall present an order which:

(1)     is consistent with this Opinion; and

(2)     provides for payment to Patricia Vannoy of the specific amounts called for in this opinion; or if the exact amount(s) cannot be agreed upon, a process by which such can be ascertained; and

7

(3) finally, since civil contempt is purely compensatory in nature, and thus in this case provides for no further or other damages and/or sanctions than (a) what is provided for in par. (2) above, plus, (b) attorney fees and out-of-pocket costs directly and specifically related to and actually incurred, in connection with the garnishments effected for the period between September 12, 2011, and October 6, 2011, the presented order should also set forth the amount of the latter, or if the amount thereof cannot be agreed upon, the same to be determined by a process specifically set forth in said order.

**Signed on January 25, 2012**

                                                  **/s/ Walter Shapero**
                                        **Walter Shapero**
                                        **United States Bankruptcy Judge**